**DIEHL**

v.

**LEHIGH VALLEY R. CO. et al.**

No. 11022.

United States Court of Appeals
Third Circuit.

Argued Sept. 15, 1953.

Decided March 3, 1954.

**96**

T. S. L. Perlman, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Joseph G. Hildenberger, U. S. Atty.,

Edward A. Kallick, Asst. U. S. Atty., Philadelphia, Pa., Samuel D. Slade, Atty., Department of Justice, Washington, D. C., on the brief), for appellant.

Richard R. Lyman, Toledo, Ohio (William M. Gerber, Philadelphia, Pa., Mulholland, Robie & Hickey, Toledo, Ohio, on the brief), for System Federation No. 96 and others.

Harry E. Sprogell, Philadelphia, Pa. (Saul, Ewing, Remick & Saul, Philadelphia, Pa., on the brief), for Lehigh Valley R. Co.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

This appeal requires a construction of Section 8 of the Selective Training and Service Act of 1940, as amended.[1] On June 24, 1942, Diehl was employed as a "car-man helper" by the Lehigh Valley Railroad Company. A car-man helper's job fell into a sub-class of a division of the craft of "car-men" under a collective bargaining agreement executed by Diehl's union and the railroad. On February 19, 1943, Diehl was promoted to a job of "set-up car-man inspector", the equivalent for our purposes of a "temporary car-man mechanic".

[1]. See 54 Stat. 890, 56 Stat. 724, 58 Stat. 798, 60 Stat. 341. See 50 U.S.C.A.Appendix, § 308. The basic statute will be found at 54 Stat. 885. As amended the Selective Training and Service Act expired in its major part on March 31, 1947. Section 8, however, is saved indefinitely. See Act of June 29, 1946, 60 Stat. 341, 342, § 7. Section 8(c) provides: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

The provisions of Section 9(c) (1) of the Selective Service Act of 1948, Act of June 24, 1948, 62 Stat. 615, amended and renamed the "Universal Military Training and Service Act" by the Act of June 19, 1951, 65 Stat. 75, 50 U.S.C.A.Appendix, § 459, are identical with those of Section 8(c) of the Selective Training and Service Act but Section 9(c) (2) of the Selective Service Act of 1948 provides: "It is hereby declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

On April 15, 1943, Diehl entered the armed forces. On August 29, 1944, Diehl's union and the railroad entered into an agreement which provided that the seniority status of car-man helpers promoted to temporary car-man mechanics would be determined by the union and the railroad at the expiration of the war emergency. On October 20, 1945, Diehl received an honorable discharge and on November 11, 1945, he re-entered the railroad's employment as a temporary car-man mechanic.

On March 1, 1949, a supplemental contract was entered into between the union and the railroad. The pertinent provision of this contract provided that "A car man helper, who has qualified as a car man mechanic * * * and is presently working on position of a temporary car man mechanic on the effective date of this agreement [March 1, 1949], shall be given the opportunity to make an election within 15 days after the date of his being notified of having worked 1160 days as a temporary car man mechanic to be placed on the permanent car man mechanics' roster with seniority date as of the effective date of this agreement *in the order with other men in which he completed 1160 days' experience* * * * and if so electing shall forfeit his seniority as a car man helper." (Emphasis added.)

Diehl would have completed 1160 days' experience on June 1, 1946, if his employment by the railroad had not been interrupted by his war service. He actually completed 1160 days' experience on January 10, 1949. The four individual appellees completed their 1160 days' experience after June 1, 1946, but before January 10, 1949. The four individual appellees were put on the seniority roster ahead of Diehl purportedly in accord with the quoted provisions of the

supplemental contract of March 1, 1949. On November 28, 1951, Diehl filed the suit at bar to have himself placed ahead of the four individual appellees on the seniority roster. The court below dismissed the complaint[2] and the appeal at bar followed.

We need not concern ourselves with the so-called one year limitation proviso in the last sentence of Section 8(c), for the contract of August 29, 1944 provided, as has been said, that the seniority status of car-man helpers promoted to temporary car-man mechanics should be determined by the union and the railroad at the expiration of the war emergency. Diehl was in the armed forces at the time the agreement referred to was made and he was reemployed by the railroad before the supplemental agreement of March 1, 1949 had been executed. He contends that he is entitled to the seniority status as a car-man mechanic that he would have achieved except for the interruption of his employment by his military service. He cites Section 8(c), in particular the phrases which state that the returning veteran must be restored to his employment "without loss of seniority" and gain the "benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence * * *." Diehl relies on the "escalator" rule cited in such decisions as Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Trailmobile Co. v. Whirls, 1947, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Aeronautical Indus. Dist. Lodge v. Campbell, 1949, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513; and Oakley v. Louisville & N. R. Co., 1949, 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87.[3] The appellees in support of their position

---

2. No opinion reported for publication.

3. In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. at pages 284–285, 66 S.Ct. at page 1111, it was said:

"Thus he [the returning veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * *

"* * * He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence."

cite other language of Section 8(c), viz., that the returning veteran "shall be considered as having been on furlough or leave of absence" and put a quite different emphasis than does Diehl upon the decisions of the Supreme Court of the United States, of this and of other courts. Both Diehl and the appellees cite legislative history in support of their positions but that history does not illuminate the problem confronting us.

■ We decide first that the provisions of Section 8 of the Selective Training and Service Act govern. These were preserved when the rest of the Act was repealed. The provisions of Section 8(c) of the Selective Training and Service Act and those of Section 9(c) (1) of the Selective Service Act of 1948 (now known as the Universal Military Training and Service Act) are identical. The statements in Section 9(c) (2) of the latter Act, beginning, "It is hereby declared to be the sense of the Congress * * * [that the returning veteran] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously * * * " [4] constituted a declaration by Congress as to the meaning of the provisions of Section 8(c) of the Selective Training and Service Act and of Section 9(c) (1) of the Universal Military Training and Service Act. Section 9(c) (2) is a restatement of the escalator doctrine of Fishgold and similar decisions. The provisions of Section 9(c) (1) of the Universal Military Training and Service Act and, therefore, those of Section 8(c) of the Selective Training and Service Act, seem to be at variance with the terms of Section 9(c) (2). It is our duty to reconcile these apparently conflicting pronouncements if we can. In so stating we are not unmindful of the fact that Diehl's rights are to be tested under Section 8 of the Selective Training and Service Act of 1940 rather than under Section 9 of the Universal Military Training and Service Act. But we cannot believe that Congress, having employed words identical in Section 9(c) of the Universal Military Training and Service Act with those of Section 8(c) of the Selective Training and Service Act of 1940, intended any substantial change.

We think, therefore, that we cannot fairly avoid consideration of the provisions of Section 9(c) (2) of the Universal Military Training and Service Act. The latest decisions of the Supreme Court respecting the rights of the returning veteran are embodied in the Aeronautical Lodge and the Oakley decisions, supra. In Aeronautical Lodge the Supreme Court resolved a conflict between this court and the Court of Appeals for the Ninth Circuit, referring particularly to our decision in Gauweiler v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 448. In that case we held that by reason of a collective bargaining agreement employees, who had been elected union officers, were entitled to a seniority status higher than that of a returning veteran, the collective bargaining agreement having been executed during the veteran's service in the armed forces. This was the problem which was before the Supreme Court and the Court of Appeals for the Ninth Circuit in Aeronautical Industrial Dist. Lodge 727 v. Campbell, 1948, 169 F.2d 252. In reversing the ruling of the Ninth Circuit in Aeronautical Lodge, Mr. Justice Frankfurter made it clear that in enacting Section 8 of the Selective Training and Service Act Congress was not creating a seniority system for veterans but was recognizing seniority systems created by collective bargaining agreements, save where their provisions were discriminatory in respect to a returning veteran. See 337 U.S. at pages 526–527, 69 S.Ct. 1287. In the Oakley case, supra [338 U.S. 278, 70 S.Ct. 122], Mr. Justice Burton stated that the position to which the returning veteran must be restored was one which "on the mov-

---

4. The language of Section 9(c) (2) is quoted in note 1 supra.

ing escalator of terms and conditions * * * would be comparable to the position which he would have held if he had remained continuously in his civilian employment.", citing Fishgold, Aeronautical Lodge and Trailmobile. See 338 U.S. at page 283, 70 S.Ct. 119. The Oakley case was decided in 1949 after the enactment of the Selective Service Act of 1948. The language employed by the Supreme Court is substantially similar to that used in Section 9(c) (2) of that Act. See note 1, supra.

■ By the decision in Aeronautical Lodge, as in our Gauweiler case, a special *class* was carved out for employees who became union officials and these were given seniority over returning veterans who were not designated to official union posts. This was done because of the terms of collective bargaining agreements and existing seniority systems. But if we apply literally the test supplied by Oakley we must advance Diehl above the four individual appellees for only so will his position become comparable to that "which he would have held if he had remained continuously in his civilian employment." If we adopt this course we must disregard the provisions of Section 8(c) of the Selective Training and Service Act and of the Selective Service Act of 1948 (the Universal Military Training and Service Act) which provide that the returning veteran "shall be considered as having been on furlough or leave of absence" and shall be "so restored" to his position without loss of seniority. There is a very palpable difference between "fur-

lough" and "leave of absence" and "continuous employment".[5] If we are to follow the "sense of the Congress" as stated by it in Section 9(c) (2) of the Selective Service Act of 1948 (the Universal Military Training and Service Act) and apply literally the interpretation of Section 8(c) of the Selective Training and Service Act in the Oakley case, we must treat "on furlough" and "leave of absence" as the equivalent of "continuous employment".

■ We cannot reconcile the irreconcilable. Congressional intent as expressed in the actual words of a statute must, we think, be held paramount to an express Congressional interpretation of that statute even in an immediately following clause. It must also be borne in mind that in the Oakley case the Supreme Court was concerned primarily with the application of the so-called one year limitation for the protection of the veteran embodied in the last sentence of Section 8(c). This was the substantial issue before that tribunal for decision. There is no Supreme Court decision which rules the precise question before us. But see the decision of the Court of Appeals for the Seventh Circuit in Fries v. Pennsylvania R. Co., 1952, 195 F.2d 445. In the instant case the supplemental agreement of March 1, 1949 creates the escalator upon which Diehl must rise to seniority. *Non constat* but that terms of that agreement which are discriminatory to the veteran must be disregarded. But the requirement of 1160 days' experience to be applied in the order in which Diehl completed them "with other men", in-

---

5. In Fishgold v. Sullivan Drydock & Repair Corp., 2 Cir., 154 F.2d 785, 788, affirmed 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, Judge Learned Hand put this issue succinctly as follows: "Subdivision (c) confirms the intention so disclosed. As subsection B reads, it would probably be understood to restore the veteran only to that same position which he held when he was inducted. That was, however, thought to be unfair; for while he was in the service, there were likely to be such changes in the per-

sonnel that when he came back, he might find himself junior to those over whom he had had priority when he left. To remedy this, by an amendment made while the bill was in Congress, he was given the same status that he would have had, if he had been 'on furlough or leave of absence' while he was in the service. How far that differed from his position, had he remained actively at work, does not appear; but clearly the amendment presupposed that a difference there might be."

cluding the four individual appellees, are not discriminatory for Diehl is treated precisely as are other workmen in his *class* or working group. The decision of the court below fitted Diehl precisely into the seniority system created by the March 1, 1949 agreement. He is dealt with on a parity with other employees who are non-veterans. To put him above the four individual appellees would seem to award him a kind of superseniority not contemplated by any statute.

Accordingly, the judgment of the court below will be affirmed.