246 F.2d 735
 Manuel BORGES, Luis Echevarria Gay, Juan Guzman, Jose M. Munoz, Herman Rivera Jirau, Percy Henry, Victor Rodriguez-Santos, Doel Zayas, Louis J. Friend, Victor M. Iraola and Ettore L. Lupi, Plaintiffs-Appellees,
v.
ART STEEL CO., Inc., Defendant-Appellant.
 No. 401.
 Docket 24689.
 United States Court of Appeals Second Circuit.
 Submitted June 10, 1957.
 Decided July 8, 1957.
 
 Morris Wagman, New York City, for defendant-appellant.
 Paul W. Williams, U. S. Atty., S. D. N. Y., New York City (Foster Bam, Asst. U. S. Atty., New York City, of counsel), for plaintiffs-appellees.
 Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District Judge.
 CLARK, Chief Judge.
 
 
 1
 This case turns upon the construction of the Universal Military Training and Service Act of 1948, 50 U.S.C.App. § 459, which gives certain rights to military veterans upon their return to their former jobs. The present appeal is taken from a final judgment in favor of the plaintiffs; an earlier order finding liability, but not fixing the amount, D.C. S.D.N.Y., 143 F.Supp. 169, led to a dismissal of the appeal as premature, 2 Cir., 243 F.2d 350.
 
 
 2
 The plaintiffs are eleven veterans who were reinstated in their old jobs by the defendant, their employer, but who were denied certain across-the-board wage increases awarded to their co-workers while they were away. Some of the increases in question were described in the collective bargaining agreement as applicable only to employees with a specified number of hours of "consecutive working service" immediately preceding the date on which the increase was granted. The agreement defined "Consecutive working service" as "actual service of 1800 hours per year as a minimum calculated on the basis of the employee's straight time hourly earnings." For example, the Agreement of August 21, 1952, provided:
 
 
 3
 "A general across-the-board general increase shall be given to each and every one of the present employees of the Company now upon the Company's employment roll (and to none other whatsoever) as follows:
 
 
 4
 "1. 12½¢ per hour to all employees having more than 45 days working service and less than 1 year consecutive working service.
 
 
 5
 "2. 15¢ per hour to all employees having 1 year or more consecutive working service."
 
 
 6
 The rules and practices of the employer and the union were that persons on furlough or leave of absence did not accrue "consecutive working service," although by operation of 50 U.S.C.App. § 459 such absence on the part of a veteran does not prevent him from continuing to accrue "seniority."
 
 
 7
 The employees brought action for a judgment declaring them entitled to these wage increases and for damages covering the period during which they have been denied the increases while back at work, and the district court granted the relief sought. The real dispute between the parties is whether for the purpose of determining their current wage rate the plaintiffs should be regarded as having been away on leave of absence or whether they should be given equal status with nonveterans who remained continuously on the job.
 
 
 8
 The starting place in our inquiry is 50 U.S.C.App. § 459(b):
 
 
 9
 "In the case of any such person who, in order to perform such training and service, has left or leaves a position * * *
 
 
 10
 * * * * * *
 
 
 11
 "(B) if such position was in the employ of a private employer, such person shall —
 
 
 12
 "(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay * * *."
 
 
 13
 The employer's basic duty thus is to restore the employee to a position of like seniority, status, and pay. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. The ambiguous word is "like." Originally Congress attempted to clarify it by 50 U.S.C.App. § 459(c) (1):
 
 
 14
 "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."
 
 
 15
 In 1946 the Supreme Court announced the "escalator principle" in construing what is now § 459(c) (1): "He [the veteran] shall be `restored without loss of seniority' and be considered `as having been on furlough or leave of absence' during the period of his service for his country, with all of the insurance and other benefits accruing to employees on furlough or leave of absence. § 8(c). Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 275, 284-285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230. Two years later Congress added what is now § 459(c) (2), codifying the "escalator principle":
 
 
 16
 "It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."
 
 
 17
 In 1954 the Third Circuit Court of Appeals was presented with a dispute over a man who had been designated a temporary mechanic before entering the service and who had been re-employed in that capacity upon his discharge. Subsequently the company and union agreed that temporary mechanics could elect to be promoted to permanent mechanics after they had 1160 days of actual experience in the temporary classification, and that their seniority in the permanent classification was to start on the day they completed their 1160 days. The plaintiff completed his 1160 days of actual experience on January 10, 1949; and the employer dated his seniority in the permanent position from that time. The employee, however, contended that he should be treated as though he had actually been working on the job while in service and that his seniority should accordingly be dated from June 1, 1946. The plaintiff invoked § 459(c) (2), claiming for himself "such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." The defendant invoked § 459(c) (1), under which the reinstated employee is to "be considered as having been on furlough or leave of absence." The Court of Appeals found the two subsections irreconcilable, and found for the employer on the theory that "Congressional intent as expressed in the actual words of a statute must, we think, be held paramount to an express Congressional interpretation of that statute even in an immediately following clause." Diehl v. Lehigh Valley R. Co., 3 Cir., 211 F.2d 95, 99. The Supreme Court's per curiam reversal stated simply that "Upon the facts disclosed in the opinion of the Court of Appeals * * * the applicable Acts of Congress, and the opinion of this Court in Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87, the judgment of the Court of Appeals is reversed." 348 U.S. 960, 75 S.Ct. 521, 522, 99 L.Ed. 749. The Oakley case, cited by the Court, said that a reinstated veteran "was entitled by the Act to be restored not to a position which would be the precise equivalent of that which he had left when he joined the Armed Forces, but rather to a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment." 338 U.S. 278, 283, 70 S.Ct. 119, 122, 94 L.Ed. 87.
 
 
 18
 The court below considered the present case governed by the Supreme Court's per curiam opinion in Diehl, but the defendant seeks to distinguish the Diehl decision in the manner in which we distinguished it in Alvado v. General Motors Corp., 2 Cir., 229 F.2d 408, certiorari denied 351 U.S. 983, 76 S.Ct. 1050, 100 L. Ed. 1497. Alvado concerned a reinstated veteran's claim for vacation pay benefits awarded his fellow employees while he was away. We held that, inasmuch as vacation pay was one of the "other benefits" mentioned in § 459(c) (1), eligibility to recover it was measured by regarding the veteran as one come back from leave of absence, and not by regarding him as having been continuously on the job as was done in Supreme Court cases dealing with seniority.
 
 
 19
 The present defendant assumes that there are only two categories — seniority rights and "other benefits" — and that wage increases are not the former. We do not agree. Our opinion in Alvado did not proceed from the premise that there were but two categories; the use of the words "seniority," "status," and "pay" found in § 459(b) is inconsistent with this approach; and the words "other benefits" are put in perspective when read with what comes immediately before and after them: "shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces."
 
 
 20
 While the problem of construction is difficult, it seems most likely that the expression "insurance or other benefits" was meant to cover a fairly narrow group of economic advantages whose common quality was that they were miscellaneous fringe benefits not usually regarded as part of "pay," "status," or "seniority." Vacation pay is of this fringe character, and we have previously refused to let returning veterans collect it if nonveterans on leave of absence do not get it. Dwyer v. Crosby Co., 2 Cir., 167 F.2d 567, 569; Siaskiewicz v. General Elec. Co., 2 Cir., 166 F.2d 463. In the latter case we explained that vacation money was not really "pay" in the statutory sense. Siaskiewicz v. General Elec. Co., supra, 2 Cir., 166 F.2d 463, 466.
 
 
 21
 The present wage increases were in no sense fringe benefits, but became a regular part of the jobholder's pay or status, swelling his pay check every week he worked in the future unless and until the union and the employer changed the terms of their agreement. We need not decide whether such increases constituted "pay" or "status"; in either event we must affirm.
 
 
 22
 What has been said so far applies to all the wage increases involved in this appeal, whether conditioned on consecutive working service, presence on the job on a certain day, or increases in cost of living index. Loeb v. Kivo, 2 Cir., 169 F.2d 346, certiorari denied Kivo v. Loeb, 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429. For those increases which are conditioned on consecutive working service of a certain number of days we place our decision on an additional ground as well, for these raises come within the statutory definition of "seniority" as the word is used in subsections (b) and (c) of § 459. "Seniority" and "consecutive working service" are not synonymous in the collective agreement with the union, but the meaning of the word "seniority" in the statute is not fixed by the local consensus of one union and one employer. "Seniority" as used in the Act covers benefits flowing from the length of tenure on the job, whether these benefits consist of the right to advance to a better job classification, as in Diehl v. Lehigh Valley R. Co., supra, 3 Cir., 211 F.2d 95, or the right to better working hours and less chance of layoff, as in Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, and Oakley v. Louisville & Nashville R. Co., supra, 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87, or the right to pay increases, as in Spearmon v. Thompson, 8 Cir., 167 F.2d 626, certiorari denied Thompson v. Spearmon, 335 U.S. 822, 69 S.Ct. 44, 93 L.Ed. 376, and Delozier v. Thompson, 335 U.S. 886, 69 S.Ct. 238, 93 L.Ed. 424, opinion clarified Spearmon v. Thompson, 8 Cir., 173 F.2d 452.
 
 
 23
 Where pay increases or promotions are awarded on the basis of skill or merit, and not on the basis of the mere passage of time, they cannot be regarded as the fruits of seniority, e. g., Addison v. Tennessee Coal, Iron & R. Co., 5 Cir., 204 F. 2d 340; but here the only requirement for the increase was to have actually been on the job for a length of time. Inasmuch as these eleven plaintiffs were employed as laborers and the increases reached all employees of all degrees of skill, there can be no serious contention that the requirement of actual service was designed to reward proficiency acquired through experience, rather than mere seniority. Compare Fries v. Pennsylvania R. Co., 7 Cir., 195 F.2d 445, where examinations were required for promotion to conductor unless the employee had actually worked for 528 days as a brakeman.
 
 
 24
 Judgment affirmed.