John R. ALFARONE, Plaintiff,

v.

FAIRCHILD STRATOS CORPORA-
TION, Defendant.

United States District Court
E. D. New York.

June 24, 1963.

Stanley F. Meltzer, Brooklyn, N. Y.
(Joseph P. Hoey, U. S. Atty., of counsel),
for plaintiff.

Gerald E. Murray, New York City,
(Cleary, Gottlieb, Steen & Hamilton,
New York City, of counsel), for defend-
ant.

DOOLING, District Judge.

The plaintiff ex-serviceman's action presents the question whether when he returned from military service he ought to have been restored to his old job-classification (and labor-grade) at his old Step in the pay-rate range applying to the job or at the higher Step in the pay-rate range of that job that he would have reached had he been on the job throughout instead of in military service. When plaintiff left for military service he had status as a comparator operator at Step 3; comparator operator is a grade 7 job and, when plaintiff returned from military service, the job had a rate range (divided into six Steps of four cents each) of $1.94 to $2.18. Defendant restored plaintiff on his return to Step 3 at $2.06 ($1.94 + 12¢); defendant considered that actual on-the-job experience, connoting increase in productivity, was

essential to earning step increases and that leaves of absence for illness, military service or other cause did not accrue experience or step-increase rights. Plaintiff claims that the Universal Military Training and Service Act [50 U.S. C.A.App. § 459(b) (c)] required that he be restored to Step 6 at $2.18 ($1.94 + 24¢) because Step progress within each labor grade is automatic every six months for every man and is uninfluenced by his actual proficiency, productivity, skill or improvement—other than bare avoidance of demotion or dismissal. It is concluded that plaintiff must prevail. The facts have been separately found.

The opinion of Chief Judge Zavatt, denying the cross motions for summary judgment, Alfarone v. Fairchild Engine and Airplane Corp., D.C., 32 F.R.D. 19, outlines the applicable law and poses the question here presented as being whether the Step increase system is "geared to skill and proficiency flowing from actual job experience or is geared to the mere passage of time." 32 F.R.D. at page 25.

 The background and the operation of the Union Contracts evince an intention to relate Step increases to those increments in skill and productivity that very generally flow from actual time on the job. But the Step increases are related only to that notional increase in skill or productivity that is taken—without demonstration—to flow from the mere continuance of employment, from the bare spending of time on the job. It is not enough under Section 459(c) (2) that inadequacy warranting demotion or dismissal, or promotion or transfers, could—if the man stayed on the job— result in the Step increases not being received; that is so general a premise of all continuance of employment that to regard it here would derange the functioning of Section 459(b) (c). Nor is it enough that the generalization that time on the job increases productivity is so demonstrably true, as a behavioral generalization, that the Step increase system is sound personnel policy and economical of costs. The statute turns on the automaticity. And rightly since that automaticity admits of a returning serviceman's being more proficient than some whose mere adequacy has meanwhile been bringing them steady Step increases. The translation of the generalization into an automatic in-grade increase system strips it of characteristics that could either differentiate it from the "seniority, status and pay" incident to simple continuity of employment or that could establish it as an award advertent to manifested increase in skill. Cf. 50 U.S.C.A.App. § 459(b) (B) (i), (c) (2).

The cases since the brusque reversal of Diehl v. Lehigh Valley R. R., 3rd Cir. 1954, 211 F.2d 95, rev'd, 1955, 348 U.S. 960, 75 S.Ct. 521, 99 L.Ed. 749 that, on these facts, require the conclusion—in addition to the Diehl case itself—are Borges v. Art Steel Co., 2d Cir. 1957, 246 F.2d 735, which so concluded as to pay increases based on "consecutive working service" which in practice did not include leave-of-absence time and Moe v. Eastern Air Lines, 5th Cir. 1957, 246 F.2d 215, 220–221, which reached the same conclusion respecting a probationary copilot's right to pay increments based on time alone. See also Spearmon v. Thompson, 8th Cir. 1948, 167 F.2d 626; Cf. Oakley v. Louisville & Nashville R. R., 1949, 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87. Altgens v. Associated Press, 5th Cir. 1951, 188 F.2d 727, although cited with apparent approval in the Moe case must be considered restricted by the emphasis in the Moe case on the significance of the language of Section 459(c) (2) and the comment on that language perhaps implicit in the Diehl case in the Supreme Court. Other cases cited either depend on evidence of genuine reliance on demonstrated increases in skill or the presence of a contract requirement of proofs of qualification, e. g., Jefferson v. Atlantic Coast Line R. R., 5th Cir. 1962, 303 F.2d 522; Addison v. Tennessee Coal, Iron & R. R. Co., 5th Cir. 1953, 204 F.2d 340; Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. R., D.Minn.1956, 148 F.Supp. 83, aff'd,

8th Cir. 1959, 259 F.2d 122; or they must be doubted as limited to the 1940 Act (which lacked the language of Section 459(c) (2)); e. g. Fries v. Pennsylvania R. R., 7th Cir. 1952, 195 F.2d 445; Nevins v. Curtiss-Wright Corporation, 6th Cir. 1949, 172 F.2d 535; Huffman v. Norfolk & Western Ry., W.D. Va.1947, 71 F.Supp. 564; or they must be considered doubtful, e. g. Brown v. Denver Post, D.Col.1956, 145 F.Supp. 351; Selgrat v. Field Enterprises, N.D. Ill.E.D.1952, 105 F.Supp. 179. Tilton v. Missouri Pacific R. R., 8th Cir. 1962, 306 F.2d 870, cert. granted, 1963, 372 U.S. 905, 83 S.Ct. 722, 9 L.Ed.2d 715 and Missouri Pacific R. R. v. Brooks, 8th Cir. 1962, 308 F.2d 531, cert. granted, 1963, 372 U.S. 904, 83 S.Ct. 730, 9 L.Ed.2d 716, seem to raise again issues raised in the Spearmon and Diehl cases and, in any case, may be thought to deal with job qualification.

█ The evidence is that plaintiff would have had to accept work in a lower grade than Comparator Operator to have stayed continuously at work if he had remained in defendant's employment. When he left for military service plaintiff was working at Labor Grade 8, Step 4, as a Bench Hand, Second Class; how long he would have continued in that job classification, or a lower one, is unevidenced. Plaintiff had status too in Labor Grade 6, Step 1 as a Bucket Polisher, First Class; there is no evidence that plaintiff would not have been restored to this job classification for a time. Plaintiff had a seniority date of January 28, 1952 in all three job classifications, a seniority that concededly grew day by day whether he was in military service or on the job. Exactly what would have happened to plaintiff is mathematically determinable by toilsome analysis of defendant's surviving personnel records. On this record plaintiff has not shown that, had he remained with defendant, he would in fact have attained Step 6 as a Comparator Operator by April 22, 1957 so as to be entitled to be rehired at $2.18 an hour and, as that is stipulated to be the sole question in dispute, plaintiff cannot recover substantial damages.

In the circumstances the defense of laches is unnecessary; however, it is not supported by evidence; it is not claimed that defendant's destruction of its records has done more than make defense more trying and, certainly, there is no evidence that the consequences of defendant's selective destruction of personnel records on the occasion of closing down an operation should be felt by plaintiff rather than defendant or that something less than barring the claim is not the responsible method of dealing with the effect of the loss of records.