James **HATTON**, Plaintiff-Appellant,

v.

The **TABARD PRESS CORPORATION**, Defendant-Appellee.

No. 223, Docket 31815.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1969.

Decided Jan. 29, 1969.

Brian J. Gallagher, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Lawrence W. Schilling, Asst. U. S. Atty., on the brief), for plaintiff-appellant.

Henry Clifton, Jr., New York City (Buell, Clifton & Turner, Thomas W. Budd, New York City, on the brief), for defendant-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

The reemployment rights of veterans have not been litigated frequently in this court, but when such cases do arise decision may be difficult.[1] This appeal is a good example, posing knotty issues on deceptively simple facts. Plaintiff James Hatton sues his former employer, The Tabard Press Corporation, for denial of reemployment benefits under section 9 of the Universal Military Training and Service Act, 50 U.S.C.App. § 459. After a trial without a jury before Judge Harold H. Tyler, Jr., in the United States District Court for the Southern District of New York, the district court dismissed the complaint and entered judgment for the defendant. 267 F.Supp. 447 (1967). For reasons set forth below, we reverse.

In January 1960, plaintiff was employed by defendant as a messenger. He worked in this capacity until January 1961, when he was promoted to the job of "miscellaneous composing room employee." About a year later, plaintiff left his position with defendant because he was inducted into the armed forces. In November 1963, shortly before plaintiff was honorably discharged from military service, defendant entered into a collective bargaining agreement with New York Typographical Union No. 6, which, for the first time, covered miscellaneous composing room employees. The agreement fixed an ascending minimum wage scale for such employees according to their years of "experience"—

---

1. See, e. g., Accardi v. Pennsylvania R. R., 341 F.2d 72 (2d Cir. 1965), rev'd, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966).

a term left undefined by the agreement.[2]

In February 1964, plaintiff returned to his job as a miscellaneous composing room employee. He was initially paid by defendant at the rate for employees with less than one year of experience. After approximately one month, however, his pay was increased, as of the date of his reemployment, to the rate for employees with more than one but less than two years of experience. This increase took into account plaintiff's pre-induction employment with defendant; however, despite his protests, plaintiff was not similarly credited with the time served in the armed forces, which would have placed him in the higher pay category of employees with more than three but less than four years of experience. In May 1964, plaintiff was laid off for lack of work. Plaintiff claims that he was underpaid by $248.70—the difference between the amount allegedly due him at the higher rate and the amount he was actually paid. After efforts by the Department of Labor on plaintiff's behalf to settle the dispute were unsuccessful, plaintiff filed suit with the aid of the United States Attorney.[3]

The statutory provisions relied on by plaintiff were first enacted in substantial part in 1940; they are designed to protect reemployment rights of veterans on the sound principle that a man "called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). In relevant part, the statute provides, 50 U.S.C.App. § 459(b), that if a person leaves a position to perform military service and, thereafter, as a veteran, makes timely application for reemployment:

> (B) if such position was in the employ of a private employer, such person shall—
>
>> (i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay * * *.

The statute further provides, 50 U.S.C. App. § 459(c) (2):

> It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.[4]

The key words of these sections, e. g., "like seniority, status, and pay" and "such status," are general terms undefined elsewhere in the stat-

2. The applicable provisions of the contract were:

> The minimum wage scales for employees covered by this Branch contract shall bear the following proportions to the base contract day scale of New York Typographical Union No. 6 as set forth in the wage scale section of the Printers League-New York Typographical Union No. 6 contract presently numbered Section 8:

| | |
|---|---|
| Beginners, without experience, first year | 38% |
| Employees with more than one year's, but less than two years' experience | 43% |
| Employees with more than two years', but less than three years' experience | 46% |
| Employees with more than three years', but less than four years' experience | 50% |
| Employees with more than four years', but less than five years' experience | 54% |
| Employees with five years' experience and over | 58% |

3. The United States represents plaintiff pursuant to 50 U.S.C.App. § 459(d).

4. This section, enacted in 1948, codified the "escalator principle" of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

ute. Supreme Court decisions, however, have fleshed out their content and elaborate the criteria for decision here. In Tilton v. Missouri Pacific R. R., 376 U.S. 169, 179, 84 S.Ct. 595, 601, 11 L. Ed.2d 590 (1964), the Court indicated that a crucial issue in this type of case is whether "advancement depends essentially upon continuing employment" or whether "the exercise of management discretion [is] a prerequisite to promotion." [5] As an example of the latter, the Court pointed to McKinney v. Missouri-Kansas-Texas R. R., 357 U.S. 265, 78 S. Ct. 1222, 2 L.Ed.2d 1305 (1958). In that case, the applicable collective bargaining agreement provided for bidding on new or vacant jobs, but promotion thereto was explicitly dependent not "simply on seniority" but also on "fitness and ability and the exercise of a discriminating managerial choice." 357 U.S. at 272, 78 S.Ct. at 1227. Accordingly, a returning veteran was not entitled to promotion to a job falling vacant in his absence unless he could prove that "in actual practice under the collective bargaining agreement advancement * * * is automatic." Id. at 274, 78 S. Ct. at 1227. In *Tilton*, the Court explained further what "automatic advancement" means, 376 U.S. at 180–181, 84 S.Ct. at 602:

> It would be virtually impossible for a veteran to show * * * that it was absolutely certain, "as a matter of foresight" when he entered military service, that all circumstances essential to obtaining an advancement in status would later occur. To exact such certainty as a condition for insuring a veteran's seniority rights would render these statutorily protected rights without real meaning. As Benjamin Franklin observed, "In this world nothing is certain but death and taxes." In every veteran seniority case the possibility exists that work of the particular type might not have been available; *that the veteran would not have worked satisfactorily during the period of his absence*; that he might not have elected to accept the higher position; or that sickness might have prevented him from continuing his employment. In light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights. [Emphasis added.]

Turning again to the facts of this case, we find the following. Under the terms of the collective bargaining agreement, miscellaneous composing room employees were essentially general assistants who formed a pool from which apprentice printers might be chosen. Plaintiff's duties in his job were described by Nathan Sorkin, defendant's president:

> [H]e would run errands, as they all do to some degree; he would empty wastebaskets, he would clean up the debris and the shavings of the linotype metal; he would bring proof paper to the proof press; he would run from the composing room to the rest of the plant; he would occasionally do a little proof pulling type; he would clean and oil the linotype machines and the saws, and make himself generally useful as these duties arise.

Miscellaneous composing room employees were given no formal training or tests, and under the collective bargaining agreement their advancement was at least formally automatic, depending only upon years of "experience." [6] Unlike the contract in *McKinney*, the agreement here contained no other conditions for promotion of such employees.[7] Sorkin did testify that before an employee like plaintiff was advanced from one pay level to another, his work would receive supervisory review; however, at that

---

5. *Tilton* involved aspects of seniority status rather than pay rates.

6. See note 2 supra.

7. In contrast, the agreement is replete with conditions for promotion of apprentices.

time, the employee either would be advanced to the next pay rate or would be discharged. Moreover, Sorkin recognized that the collective bargaining agreement allowed discharge only for specified reasons, fairly described as obvious incompetence.[8] Accordingly, defendant's discretionary review was in fact sharply limited to two alternatives: *promotion* or *discharge* for unsatisfactory performance. And as Sorkin stated, "barring unforeseen things, we usually move the young man up." Indeed, the parties have stipulated that

> if the plaintiff had been continuously employed at the trade, he would have received, at the end of each step in the contract, the increase in wages therein provided, or, if incompetent, the employer would have the right to and must discharge him.

■ Applying the law to these facts, we are immediately struck by the fact that section 459(c) (2) literally covers this case; i. e., the status plaintiff "would have enjoyed if he had continued in such employment continuously" instead of serving in the armed forces is the status to which he lays claim; because of the management review policy of up or out, there was no other alternative. But preferring not to rest on literalness alone, we turn again to the teaching of *Tilton* and *McKinney*; as we understand those decisions, plaintiff is entitled to prevail. *Tilton* made clear that the possibility that a veteran "would not have worked satisfactorily during the period of his absence" did not defeat rights which would otherwise accrue to him. To the same effect, see Brooks v. Missouri Pacific R. R., 376 U.S. 182, 185, 84 S.Ct. 578, 602, 11 L. Ed.2d 599 (1964). It is true that, as

defendant urges, plaintiff did not have an absolute right to advance to a higher pay rate each year because management, in its annual review, might decide to discharge him for incompetence. But that is the very possibility which the Supreme Court in *Tilton* told us to disregard. Defendant had no policy of merely passing over a miscellaneous composing room employee as a year's service ended, refusing to raise his pay but continuing to employ him. If it had done that, we would have had a different case. However, it is apparent from this record that such employees glide from one pay rate into a higher because of years of service, so long as their work meets the minimum standard necessary to avoid discharge.[9] Accordingly, we believe that, under the controlling authorities, the element of management discretion was too narrow to defeat plaintiff's suit.

■ However, another issue remains, which, though similar, is not identical. Generally speaking, it is of course possible that advancement of an employee may depend not upon supervisory discretion alone—or at all—but rather upon completion of specified training. The element of management discretion may be absent in the sense that if the necessary proficiency is demonstrated, promotion must follow, yet acquisition of a certain skill may be a required condition of a pay increase. Therefore, in this sense we must still decide whether the step increases in pay in plaintiff's job classification were "intended to be related peculiarly to proficiency," Moe v. Eastern Air Lines, Inc., 246 F.2d 215, 220 (5th Cir. 1957), cert. denied, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958), rather than to mere passage of

---

8. The contract allowed discharge for incompetence, disobedience of company rules, inattention to duty, and "to reduce the force." The latter appears similar to layoff for lack of work, not at issue here.

9. Cf. Alfarone v. Fairchild Stratos Corp., 218 F.Supp. 446, 447 (E.D.N.Y.1963):

It is not enough under Section 459(c) (2) that inadequacy warranting demotion or dismissal * * * could—if the man stayed on the job—result in the Step increases not being received; that is so general a premise of all continuance of employment that to regard it here would derange the functioning of Section 459(b) (c).

time.[10] Under the contract, it is true, increases are geared to "experience," a word which could have either meaning. And in *Tilton*, the Court did say, 367 U.S. at 181, 84 S.Ct. at 602:

> A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period.

But that statement must be viewed in context; the real issue is whether the advance in pay requires more "training" than that inherent in any continuance of employment. We do not suggest that the question is easy to resolve, but we had a similar problem in Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957). In deciding for the veterans there, we said, 246 F.2d at 739:

> For those increases which are conditioned on consecutive working service of a certain number of days we place our decision on an additional ground as well, for those raises come within the definition of "seniority" as the word is used in subsections (b) and (c) of § 459. "Seniority" and "consecutive working service" are not synonymous in the collective bargaining agreement with the union, but the meaning of the word "seniority" in the statute is not fixed by the local consensus of one union and one employer. "Seniority" as used in the Act covers benefits flowing from the length of tenure on the job, *whether these benefits consist of a right to advance to a better job classification* * * * or the right to better working hours and less chance of layoff * * * *or the right to pay increases* * * *.
>
> *Where pay increases or promotions are awarded on the basis of skill or merit, and not on the basis of the mere passage of time, they cannot be*

*regarded as the fruits of seniority,* * * * *but here the only requirement for the increase was to have actually been on the job for a length of time.* Inasmuch as these eleven plaintiffs were employed as laborers and the increases reached all employees of all degrees of skill, there can be no serious contention that the requirement of actual service was designed to reward proficiency acquired through experience, rather than mere seniority. [Citations omitted; emphasis added.]

Here too, it seems to us, the "requirement for the increase" was actually only that plaintiff have been "on the job for a length of time," a conclusion reinforced by the unskilled nature of plaintiff's duties. Accordingly, section 459 guarantees him the right to get the benefit of time spent in service. In support of its contrary position, defendant cites various cases to us. Some of them in fact suggest the result we have reached here,[11] and others have been limited by a later decision of the same or of a superior court.[12] In any event, we have considered them all and, on these facts, they do not persuade us to a different result.

We wish to make clear the limited nature of our holding. We are not deciding that a returning veteran necessarily has a right to promotion under a collective bargaining agreement which, as in *McKinney*, spells out fitness and ability as criteria. Cf. Power v. Northern Illinois Gas Co., 388 F.2d 427 (7th Cir. 1968). We hold only that on these facts, where generally applicable pay increases are geared to years on the job and annual review is confined to granting the increase or discharging for unsatisfactory performance, plaintiff's advancement in pay depended "essentially upon continuing employment." Tilton v.

10. In *Moe*, the successful returning veteran was a pilot.

11. E. g., Borges v. Art Steel Co., 246 F.2d 735 (2d Cir. 1957).

12. E.g., Altgens v. Associated Press, 188 F.2d 727 (5th Cir. 1951), which preceded by 6 years Moe v. Eastern Air Lines, Inc., 246 F.2d 215 (5th Cir. 1957), cert. denied, 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958).

Missouri Pacific R. R., supra, 376 U.S. at 179, 84 S.Ct. 595, 11 L.Ed.2d 590. We conclude, therefore, that "it was reasonably certain that [plaintiff's] advancement would have occurred," id. at 181, 84 S.Ct. at 602, during the time he was in military service had he continued in defendant's employ instead. Accordingly, the spirit of the Act and the Court decisions construing it persuade us that plaintiff should be given that benefit now.

Defendant's principal argument in this court is that plaintiff is bound by the findings of fact of the district court, since they are not clearly erroneous. However, we are not required to place the key holdings of the district court into that category. Indeed, the facts are, for all practical purposes, not in dispute and largely stipulated; there were in fact no live witnesses at trial, since Sorkin's testimony was received by deposition. The key questions are fundamentally ones of law, or of mixed fact and law, e. g., construction of the phrase "like seniority, status, and pay" in the Act and of the term "experience" in the collective bargaining agreement. Accordingly, we see no need to discuss the application of the clearly erroneous rule.

Judgment reversed; the case is remanded with instructions to enter judgment in plaintiff's favor.