Hamilton Eugene BEARD, James C. Hutchens, and Robert A. Tucker, II, Plaintiffs,

. v.

NORFOLK AND WESTERN RAILWAY COMPANY, Defendant,

and

System Federation No. 16, Railway Employees' Department, AFL–CIO, Intervenor.

Civ. Nos. 74–247 to 74–249.

United States District Court, W. D. Virginia, Roanoke Division.

Jan. 16, 1980.

Sidney Salkin, Philadelphia, Pa., William H. Berger, Atlanta, Ga., Dept. of Labor, and Paul R. Thomson, Jr., U. S. Atty., Roanoke, Va., for plaintiffs.

Richard A. Keeney and Thomas B. Mason, Roanoke, Va., for defendant. B. Purnell Eggleston, Roanoke, Va., Michael S. Wolly, Washington, D. C., for intervenor.

## OPINION

TURK, Chief Judge.

As part of this nation's selective service legislation, Congress since 1940 has protect-

ed the reemployment rights of veterans.[1] These consolidated cases present a narrow, though difficult and important, question under the Veterans' Reemployment Rights Act, as amended by the Vietnam Era Veterans Readjustment and Assistance Act of 1974, 38 U.S.C. § 2021 (1976) (hereinafter "the Act"): Should the time plaintiffs spent in military service be counted toward the 1040 days' work experience ordinarily required as a prerequisite to the attainment of certain seniority rights under the relevant collective bargaining agreement? The cases are before the court on cross motions for summary judgment.

The facts are not in dispute. Each plaintiff is presently employed by defendant Norfolk and Western Railway Company in Roanoke, Virginia. The job duties of each involve mainly the repair and maintenance of freight cars. Under the collective bargaining agreement between defendant and the union that represents the plaintiffs, an employee of the defendant railway attains full journeyman carman status, upon his successful completion of 1040 days of work as an apprentice car repairer. As a concomitant of their higher seniority status, journeyman carmen have greater protection against layoffs than apprentice car repairers have.

Each of the plaintiffs was initially hired by the defendant railway company as an apprentice car repairer. Each plaintiff subsequently was inducted into the armed forces for approximately three years' active military service. Upon their honorable discharges, the plaintiffs all promptly returned to employment with the railway. The crux of their complaints is that instead of including the number of days of each plaintiff's military absence in calculating the fulfillment of the 1040-day work requirement, the railway—in violation of the Act—credited plaintiffs only for those days on which they had actually worked before and after their service in the armed forces. As a result, when in October 1971 it became necessary for the defendant railway to lay off some

employees due to lack of work, plaintiffs had not yet been granted journeyman status and, accordingly, were not yet beneficiaries of the greater job protection which journeyman carmen enjoy. Each of the plaintiffs was laid off. It is stipulated that if the periods of military service *had* been counted toward the attainment of journeyman carman status, each plaintiff would have been laid off for a shorter period of time. Thus, plaintiffs seek an award of the wages they would have earned had their lay-off periods been shorter. The parties have stipulated the amounts of those wages.

The controlling portion of the Veterans' Reemployment Rights Act provides that a returning veteran should be restored to his employment

> in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment . . . .

38 U.S.C. § 2021(b)(2) (1976).

The purpose of this legislation is plain: "He who [is] called to the colors [is] not to be penalized on his return by reason of his absence from his civilian job." *Fishgold v. Sullivan Corp.*, 328 U.S. 256, 284, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). The veterans' reemployment statutes often have been said to embody an "escalator principle." *E. g., Tilton v. Missouri Pac. R.R. Co.*, 376 U.S. 169, 175, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); *Earls v. Atchison, Top. & S. F. Ry. Co.*, 532 F.2d 133, 135 (9th Cir. 1976); *Adams v. General Motors Corp.*, 525 F.2d 161, 166 (6th Cir. 1975). These statutes codify the principle that the reemployed veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously" during his period of military service. *Fishgold*, 328 U.S. at 284–85, 66 S.Ct. at 1110–1111.

---

1. For a brief history of the veterans' re-employment statutes, *see Foster v. Dravo Corp.*, 420

U.S. 92, 96–97, 95 S.Ct. 879, 882, 43 L.Ed.2d 44 (1975).

As so often is the case with general statutory rules, crucial qualifications have emerged in the case law. In *Tilton*, 376 U.S. at 181, 84 S.Ct. at 602, the Supreme Court stated that "[a] returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period." And in *McKinney v. Missouri Kan. Tex. R.R. Co.*, 357 U.S. 265, 272, 78 S.Ct. 1222, 1227, 2 L.Ed.2d 1305 (1958), the Court said that "a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer."

■ Both of these qualifications reflect circumstances in which it is not at all certain that the returning veteran would, if his civilian job had not been interrupted, actually have attained a given advancement at the civilian job. Where, on the other hand, advancement is geared solely to the passage of time, advancement obviously is more certain. Hence, a useful test for determining whether a veteran is entitled to the protection of the Act is "the test of reasonable certainty"—whether " 'as a matter of foresight, it was reasonably certain that advancement would have occurred . . .' " *Collins v. Weirton Steel Co.*, 398 F.2d 305, 309 (4th Cir. 1968) (quoting *Tilton*, 376 U.S. at 180, 84 S.Ct. at 602).[2]

In the instant cases the defendant railroad contends that the 1040-day work requirement is a training period, each day of which must actually be worked on the job before the apprentice carman repairer is advanced to journeyman status. Citing *Til-*

*ton*, 376 U.S. at 181, 84 S.Ct. at 602, the railway maintains that the Act does not require it to count the days spent in military service toward the completion of this training program. The attainment of journeyman status, says the railway, depends on the achievement of a certain level of proficiency, and that proficiency can be acquired only by completing a 1040-day training period.[3] The railway insists that by retroactively adjusting plaintiffs' priority on the seniority roster—subsequent to each plaintiff's actually serving 1040 days on the job—it has done all that the Act requires.[4]

■ In order to override the "escalator principle" of the Act, an employer asserting the necessity of training as a prerequisite to job advancement must show that the advancement requires more training than that "inherent in any continuation of employment." *Hatton v. Tabard Press Corp.*, 406 F.2d 593, 598 (2d Cir. 1969). The issue in these cases, then, may be stated more specifically as follows: The plaintiffs must prevail if advancement to journeyman status at the railway occurs simply by virtue of the passage of time and thus would be "reasonably certain" to occur in the normal course of events. If, on the contrary, advancement depends solely upon the acquisition of job proficiency demonstrated by the successful completion of a training program, graduation from which may not be deemed "reasonably certain" to occur, the defendant must prevail. Analysis focuses on the characteristics of the training program: whether completion of it is merely a function of time; whether it furnishes more training than would be "inherent in any continuance of employment." *Hatton*, 406 F.2d at 598. This inquiry is guided by the pronouncement of the Supreme Court that

2. The second branch of the "reasonable certainty" test originally articulated in *Tilton*, 376 U.S. at 181, 84 S.Ct. at 602—that "as a matter of hindsight, [the advancement] did in fact occur"—is not in issue in this case. It is not disputed that each plaintiff has worked the requisite 1040 days and that each has now been accorded journeyman status. The dispute focuses on when that status should have been conferred.

3. Under the collective bargaining agreement, journeyman carman status may also be conferred upon those with four years (the equivalent of 1040 work days) of experience in carmen's work at another railroad.

4. As noted already, each plaintiff has now achieved journeyman carman status under the railway's calculations.

the legislation involved here is to be "liberally construed for the benefit of those who left private life to serve their country . . . ." *Fishgold*, 328 U.S. at 285, 66 S.Ct. at 1111. *See Collins*, 398 F.2d at 308.

Turning to the stipulated facts in the instant cases, several determining factors emerge. At the outset the court notes that there was no formalized instruction or structured training program for apprentice car repairers at defendant's shop. Instead, "[t]he plaintiffs learned how to perform various tasks of the carman's craft by working upon and observing the performance of such tasks by more experienced carmen." There was, moreover, no proficiency test administered at any time; neither merit nor management discretion played any part in promotions. According to the defendant railway, mere completion of the 1040-day apprenticeship alone was "regarded by Management and Union alike to be evidence that [the apprentices had] acquired sufficient skill in their work to be considered journeymen. . . ." As a matter of custom and practice, the attainment of journeyman status after 1040 days appears to be automatic; the defendant has never denied journeyman status to any employee who has completed 1040 days as an apprentice.

Under the collective bargaining agreement, an apprentice would not be retained beyond a six-month period if during that period he "showed no aptitude to learn his trade." However, the defendant (at least during the period of plaintiff Tucker's military service) has not denied any apprentice car repairer continuance in the program because of lack of progress in the program. And the defendant concedes that if an apprentice were kept on throughout the six-month period, "he would have advanced" to journeyman at the end of the 1040-day period. Finally, the plaintiffs as apprentices all on numerous occasions actually performed the work of journeymen, unsupervised, and at journeymen's pay, in a temporarily "upgraded" apprenticeship capacity.

In short, the defendant railway's training program appears to consist of nothing more than a period of experience on the job. This, obviously, is "inherent in any continuance of employment." *Hatton*, 406 F.2d at 598. Under these circumstances, it is "reasonably certain," *Tilton*, 376 U.S. at 180, 84 S.Ct. at 602, that an employee who begins the program will complete it and move on to journeyman status. Indeed, the undisputed facts in these cases suggest that in practice the 1040-day period of "apprenticeship" was not nearly so much a training period as it was a simple waiting period.

The training period issue was before the Court of Appeals for the Eighth Circuit in *Cohn v. Union Pac. R. R. Co.*, 572 F.2d 650 (8th Cir.), *cert. denied* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978), *aff'g* 427 F.Supp. 717 (D.Neb.1977). The court in *Cohn* was concerned with the impact of a 1040-day "training" period on veterans'. reemployment rights in circumstances practically identical to those presented here. The court held that the attainment of journeyman status under the collective bargaining agreement and prevailing practice at the employer's shops was "independent of any achievement of proficiency or employer discretion." 427 F.Supp. at 717.

The defendant railway contends that *Cohn* is distinguishable from the instant cases because in that case the reemployed veterans were paid journeymen's wages and performed journeymen's work during the entire 1040 day period whereas in the instant cases it is agreed that the plaintiffs received raises and their duties changed when they attained journeyman status. Defendants, however, do not suggest why that factual variance—which, in light of the remarkable factual similarities between this case and *Cohn*, is indeed slight—should command a different result in this case. Nor is there any suggestion that an increase in wages and change of duties would have produced a different result in *Cohn*. The fact that a journeyman might be paid more than an apprentice does imply, of course, that the employer considers the journeyman to be a more valuable employee. Nevertheless, as the court in *Adams v. General Mo-*

*tors Corp.*, 525 F.2d 161, 166 (6th Cir. 1975), noted, "a returning veteran may not be denied the benefit of the 'escalator principle' [solely] because of a general benefit to the employer of keeping experienced workers."[5] A careful review of the record in this case, as well as a critical reading of *Cohn* and its forebearers, convinces this court that the district court's opinion in *Cohn* is, indeed, "well-reasoned," 572 F.2d at 650, and that it is exceptionally strong precedent for affording the plaintiffs here the protection of the Act.

The parties have stipulated that if the plaintiffs prevail, the following amounts would be owed in wages to the individual plaintiffs:

| | |
|---|---|
| Hamilton Eugene Beard | $4,571.36 |
| James C. Hutchens | $6,484.71 |
| Robert A. Tucker II | $1,783.29 |

Judgment will be entered in favor of each of the plaintiffs for the above sums.

### ORDER

In accordance with the opinion this day filed, it is ORDERED and ADJUDGED as follows:

1) The motion of the defendant Norfolk and Western Railway Company for summary judgment in each case is hereby DENIED;

2) The motion of the plaintiff Hamilton Eugene Beard for summary judgment is hereby GRANTED and judgment is granted in favor of the plaintiff Hamilton Eugene Beard against the defendant Norfolk and Western Railway Company in the amount of $4,571.36, with interest thereon from this date until paid;

3) The motion of the plaintiff James C. Hutchens for summary judgment is hereby GRANTED and judgment is granted in favor of the plaintiff James C. Hutchens against the defendant Norfolk and Western Railway Company in the amount of $6,484.71, with interest thereon from this date until paid;

4) The motion of the plaintiff Robert A. Tucker, II for summary judgment is hereby GRANTED and judgment is granted in favor of the plaintiff Robert A. Tucker, II against the defendant Norfolk and Western Railway Company in the amount of $1,783.29, with interest thereon from this date until paid;

5) The three cases are stricken from the docket of this court.

---

5. The union, a party here as an intervenor, urges that the ability to work independently of instruction or supervision is the key to attaining journeyman status and that none of the plaintiffs achieved this necessary independence while apprentices. But the frequency with which each plaintiff while nominally an apprentice worked in an "upgraded" capacity doing in fact a journeyman's job, without supervision, indicates that as a practical matter, at least in the eyes of management, plaintiffs as apprentice car repairers had indeed achieved the independence integral to journeyman status.

Any argument that since journeymen are better paid, they must be more proficient and that their higher level of proficiency demonstrates the effectiveness of the training program and the necessity of completing it is seriously undercut by the railway's concession that plaintiffs as nominal apprentices freely "flowed back and forth" from the normal apprentice status to temporary "upgraded" status during the 1040-day period. Memorandum in support of defendant's Motion for Summary Judgment 15.