**FRIES v. PENNSYLVANIA R. CO.**

No. 10533.

United States Court of Appeals
Seventh Circuit.

April 3, 1952.

Rehearing Denied April 24, 1952.

Hansford C. Mann, Terre Haute, Ind., Lawrence B. Moore, Paris, Ill., for appellant.

Clifford O. Shandy, Terre Haute, Ind., for appellee.

Before MAJOR, Chief Judge and KERNER and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This action was brought under the Selective Training and Service Act, as amended, Title 50 U.S.C.A.Appendix § 308 (subse-

quently called the Act), by plaintiff, a veteran, against the defendant railroad company, for reinstatement to the position as brakeman and for wages lost by reason of his alleged wrongful discharge. The court, on October 10, 1951, adopted findings of fact and conclusions of law, and, predicated thereon, entered a judgment adverse to the plaintiff, from which this appeal comes.

Plaintiff was employed by the defendant as a brakeman on March 20, 1941, and continued in such employment until inducted into the United States Army July 29, 1942. Upon his discharge from such army service, on November 1, 1945, he made timely application with the defendant for reinstatement, was reemployed and resumed work as a brakeman on January 10, 1946. Plaintiff during all the period material to this litigation was a member of the Brotherhood of Railroad Trainmen.

On May 10, 1946, plaintiff received from the defendant by registered mail the following letter:

"This office issued Bulletin No. 27, dated March 29, 1946, which provided that you would take the required examination for promotion to conductor not later than May 4, 1946.

"You failed to comply with Bulletin No. 27 referred to and in accordance with the provisions of Rule 1–B–2, paragraph (b), you have ceased to be an employe of this Company and your service has been terminated."

The rule referred to in this letter was contained in the collective bargaining agreement (afterward called the agreement) entered into between the Brotherhood and the defendant on September 16, 1942 (while the plaintiff was in the military service) and, as the letter discloses, plaintiff's employment was terminated for failure of compliance on his part. As already shown, the termination of plaintiff's employment as a brakeman was within one year after his reemployment subsequent to his military service.

Obviously, the ultimate issue for decision is whether plaintiff's employment was terminated in violation of his rights as fixed by the Act, and this in turn depends upon whether it was with or without cause. Defendant contends that the termination was justified, in fact required, by the terms of its agreement with the Brotherhood and it follows, therefore, that it was not "without cause." Plaintiff contends that the provision of the agreement relied upon by the defendant is invalid because in conflict with the Act and, therefore, furnishes no justification for defendant's action.

The provision of the agreement which furnishes the main basis for the controversy relates to the means and manner of promoting a brakeman to the rank of conductor. On July 29, 1942 (at the time of plaintiff's induction into military service) and for many years prior thereto, there was in effect an agreement between defendant and the Brotherhood which required in effect that a trainman, in order to obtain such promotion, successfully pass one of three examinations. The agreement stated, "A trainman failing to pass the third examination or declining any examination or promotion will become the junior brakeman, and can only come up again in his turn."

The agreement of September 16, 1942 contained paragraphs (a) and (b) of Rule 1–B–2, material to the instant controversy. Paragraph (a) provides in effect that any brakeman who has "actually worked" as such for a period of time less than 528 days shall be examined for promotion to conductor. Paragraph (b) provides for three examinations, with 30 days intervening to prepare for the next if he has failed to pass the preceding examination. It provides, "If he fails to pass the third of such examinations, or declines to take any of the said examinations, he shall cease to be an employe of the Company, provided that, prior to the effective date of this Agreement, he has actually worked as brakeman, baggageman, or ticket collector less than 528 days." The rule further provides that if a brakeman has "actually worked" 528 days or more prior to the effective date of the agreement and fails to pass the third of such examinations, or declines to take any of said examinations, "he shall become the junior trainman

on the seniority roster and shall not thereafter be entitled to promotion to conductor."

Plaintiff had actually worked about 495 days as a brakeman at the time he entered military service and had that number of days to his credit on September 16, 1942, the effective date of the new agreement. No question is raised but that the new agreement was entered into as the result of the normal bargaining process, in good faith and without intention or purpose on the part of either of the contracting parties to discriminate against veterans. The name of the plaintiff, upon his reemployment subsequent to military service, appeared on defendant's roster of employees in the same seniority position as though he had not been absent.

On March 29, 1946, defendant's "Trainmaster's Bulletin No. 27" was posted at numerous places, in conformity with the requirements of the agreement. This bulletin stated, "The following trainmen are entitled to be promoted to conductor in accordance with their brakeman seniority standing and they must take the required examination not later than May 4, 1946." Ten names were listed, including that of the plaintiff. The bulletin specified the place and the days on which an examiner would be available and concluded, "The trainmen named must comply with the above and their attention is called to Paragraph (b) of Rule 1-B-2 which provides that a trainman who fails to pass the third examination or declines to take any of the examinations, shall cease to be an employee of the Company."

■ In connection with this bulletin, plaintiff contends that it was without effect because not in compliance with Rule 1-B-3 of the bargaining agreement, which provided that "a list of eligible trainmen shall be posted for ten days prior to the time of examination * * *." Because the bulletin states that "The examiner will be available effective at once," it is argued that the ten-day posting required by the rule was not complied with. This contention, of course, overlooks the fact that the bulletin was posted on March 29 and that all persons named thereon were given until May 4 to take the required examination. The District Court held that the rule as to notice had been complied with, and with this we agree.

Plaintiff, having failed or declined to take any of the examinations required by Rule 1-B-2 and as required by Trainmasters Bulletin No. 27, received from the defendant the letter of May 10, 1946 (heretofore referred to), notifying him that his service with the defendant had been terminated. Thereupon, plaintiff sought the assistance of the personnel division established by the Director of Selective Service to render aid in the re-placement of veterans in their former positions as provided in § 8(g) of the Act of 1940, as amended.

Between May 10, 1946 and February 15, 1949, when the instant suit was filed in the District Court, plaintiff pursued numerous and divers means in an attempt to obtain relief. We think there is no point in detailing his activities in this respect because they are immaterial on any issue other than that of laches, upon which the District Court made no finding and upon which the defendant has disclaimed reliance in this court.

■ It is true, of course, that a failure to pass or refusal to take the examinations provided for by the agreement in effect at the time plaintiff entered the military service could only result in his demotion to a "junior brakeman," while, under the agreement entered into while plaintiff was in the service, a failure to pass or the declination on the part of any employee who had "actually worked" less than 528 days to take the examinations called for a cessation of his employment. The latter agreement, however, was uniformly effective as to all employees irrespective of whether they were actually at work, in the military service or on furlough or leave of absence because of ill health or for some other reason. Plaintiff contends that the time which he spent in the service should be counted as days "actually worked," at least to the extent of crediting him with having actually worked 528 days. We find no support in the cases or in the Act for such a theory.

Plaintiff accepted the benefits and advantages which the agreement provided, including his seniority rights which were recognized upon his return from service, as required by the Act. The provision in the 1942 agreement complained of by plaintiff was only an added condition to the terms of employment applicable to all alike. It was not an unreasonable or arbitrary condition but was one, insofar as the record discloses, of importance to the contracting parties. Plaintiff, like all others similarly situated, had the option to comply and retain his position or to ignore it, with the consequence which he must have known would follow. He chose to pursue the latter course and as a result his employment was terminated. It may be assumed so we think, that the defendant and the Brotherhood were under an obligation to enforce the provisions of their agreement, and that defendant had no alternative but to notify plaintiff that his employment was terminated upon his refusal to comply with what we think was a reasonable condition.

Plaintiff cites a number of cases in support of his contention, including Fishgold v. Sullivan Drydock & Repair Corp., 328 U. S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513. No good purpose could be served in a detailed analysis of these cases. None of them relate to facts similar to those of the instant case. The most pertinent observation, however, is contained in the Campbell case, wherein the court stated 337 U.S. at page 525, 69 S.Ct. at page 1289: "It is of the essence of collective bargaining that it is a continuous process. Neither the conditions to which it addresses itself nor the benefits to be secured by it remain static. They are not frozen even by war. Thus, under the Act the veteran accumulates time toward his seniority while in the service; he also becomes the beneficiary of those gains the achievement of which is the constant thrust of collective bargaining. In other words, the Act gives him the status of one who has been 'on furlough or leave of absence' but uninterruptedly a member of the working force on whose behalf successive collective agreements are made. In this way the Act protects the furloughed employee from being prejudiced by any change in the terms of a collective agreement because he is 'on furlough,' but he is not to be favored as a furloughed employee as against his fellows. This is the essence of our decision in Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230."

We think that plaintiff's status upon his reemployment subsequent to military service was precisely the same as one who had been "on furlough or leave of absence," and this notwithstanding the new condition which had been attached to the terms of his employment, as well as that of all other trainmen. In our view, the terms thus attached were not discriminatory to veterans as a class, of which plaintiff was one, and were not in conflict with the protection afforded by the Act. It follows that plaintiff's discharge or separation from his employment was not arbitrary or for the purpose of depriving plaintiff of any protection provided by the Act; in other words, it was not "without cause." As this court stated in Keserich v. Carnegie-Illinois Steel Corp., 163 F.2d 889, 890 (opinion written by Mr. Justice Minton while a member of this court): "The basis of the respondent's action was such as a fair-minded person might act upon. It was not a mere excuse or an arbitrary action to avoid the provisions of the statute. The cause intended by the statute does not have to be a legal cause. It may be such cause as a fair-minded person may act upon, and where such action is not arbitrarily taken with a purpose or as an excuse to avoid the statute, it is cause within the meaning thereof."

Other questions of minor importance are argued by the plaintiff, which we have examined and find without merit.

The judgment appealed from is

Affirmed.