**Frank S. LITWICKI, Plaintiff,**

v.

**PPG INDUSTRIES, INC., Defendant.**

**Civ. A. No. 70–51.**

United States District Court,
W. D. Pennsylvania.

Sept. 19, 1973.

Motion for Clarification or Reconsideration Nov. 15, 1973.

As Amended Oct. 24, 1974.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Louis Weiner and Sidney Salkin, U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Hugh M. Finneran, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

■ In 1940 the Selective Service Training and Service Act gave re-employment rights to veterans, and these rights have been readopted without substantial change in the Universal Military Training and Service Act of 1948 and the Military Selective Service Act of 1967. [50 U.S.C.A. App. §§ 451–473]. The legislative history of the Act shows that it was intended to be remedial in scope and the courts have followed the mandate of liberal construction in order to protect the veteran. Much of the language is broad and ambiguous and it has engendered a large body of court interpretation as well as the embroidery of academic analysis and speculation in the law reviews.

With all this body of precedent it is striking to note that we have before us the first reported issue of a contested pension case. When the Cincinnati of World War II returned from Anzio or Iwo Jima to their plowshares they were more immediately concerned with questions of re-employment, promotion, vacation pay and unemployment benefits, and only now the advancing years force their eyes upon the effect of their military service on the company pension plan. We have found no decided cases on pension rights under the Act. [The 1972 consent judgments entered in the Eastern District of Pennsylvania reported in 68 Lab.Cas. ¶¶ 12,832, 12,833, 12,834 and 12,835 are not weighty precedents]. Thus we enter into the consideration of the immediate issue in the case at hand unenlightened by any wisdom of our colleagues but unencumbered by any misplaced confidence.

Frank S. Litwicki, the plaintiff, served in the military service of the United States from January 27, 1947 to June 14, 1948. He was initially employed by the defendant on January 22, 1951 and he worked continually for defendant until February 2, 1954. On February 2, 1954 he voluntarily enlisted in the military service of the United States and was given a military leave of absence by defendant. He served on active military duty until November 26, 1957, was honorably discharged and made a timely application for re-employment by defendant. He returned to defendant's employment on December 1, 1957 and has continued in defendant's employment until he terminated his employment on September 29, 1969. He thus had a continuing relationship with his employer of 18⁹⁄₁₂ years. However, for the purpose of calculating "continuous service" in determining pension rights in accordance with the pension agreement under which plaintiff worked, the agreement provides that:

Section 3—Determination of Continuous Service.

B. (1) "Continuous service in any calendar year shall be credited at the rate of ¹⁄₁₂ of a year for every 125 hours actually worked as an Employee in the plants during such calendar year, provided, however, that an Employee may not receive continuous service credit or more than one year in any one calendar year. Except as provided in paragraphs C, G, and I of this Section 3 of this Part I, no continuous service shall be credited for any period not actually worked as an Employee in the plants." [Stipulation, Exhibit E].

The pension agreement further provides:

Section 3. C. "Where an Employee, other than temporary Employee, enters the military service of the United States, is discharged or relieved from active service under conditions other than dishonorable, and returns to active employment within ninety (90) days after such discharge or relief, such absence shall not constitute a

break in continuous service, but for the purpose of computing the amount of his pension, only the period of service rendered in time of war or pursuant to a national conscription law plus ninety (90) days shall be considered, and years of continuous service shall be credited at the rate of $\frac{1}{12}$ of a year for each calendar month of such period of service . . .". [Stipulation, Exhibit A].

The eligibility requirements of the defendant's pension plan require as a condition of vesting of pension rights that the employee have ten or more years of continuous service under the Pension Agreement. [Stipulation, Exhibit E, Sec. 1A(5)].

In accordance with the foregoing Agreement the defendant has calculated the "continuous service" of the plaintiff as follows:

| | |
|---|---|
| For the period January 22, 1951 to February 2, 1954 | 3 $\frac{1}{12}$ years |
| For the period of military service from February 2, 1954 to November 26, 1957, credit for the period of the Korean War (June 27, 1950 to January 31, 1955) during his service, February 2, 1954 to January 31, 1955 | 1 year |
| *No continuous service was granted for the period after January 31, 1955 to December 1, 1957 because this was determined to be after the end of the Korean War, in accordance with the collective bargaining agreement.* | |
| For the period December 1, 1957 to September 29, 1969 | 4 $\frac{9}{12}$ years |
| *For a total "continuous service" of* | 8 $\frac{10}{12}$ years |

Employees of the defendant who are on lay-off, sick leave, or leave of absence are not credited with continuous service under the terms of the collective bargaining agreement.

No continuous service was credited to the plaintiff for the period from February 1, 1955 to December 1, 1957, the balance of his military service up to the time of his reinstatement in the employment of the defendant. If he were to be granted credit for this additional period of military service he would be entitled to 2 $\frac{10}{12}$ years credit, in which case plaintiff's total service credits would amount to 11 $\frac{8}{12}$ years, sufficient to satisfy the vesting requirement of ten years and qualify him for a pension under the defendant's pension plan for an employee with this number of years of continuous service.

The defendant has refused to credit the entire period of military service because it considered the plaintiff's first enlistment in 1947 in the armed forces as being pursuant to the national conscription law for the purpose of determining continuous service credit, and refused to consider the voluntary enlistment of 1954 as being pursuant to a national conscription law, except that it did agree to treat the period of Korean War service as credit for "continuous service" under the provisions of the Pension Agreement providing for:

Section 2. C. ". . . but for the purpose of computing the amount of his pension, only the period of service rendered in time of war or pursuant to a national conscription law plus ninety (90) days shall be considered . . .".

The collective bargaining agreement in the present case contained a provision in all the years applicable to the present case as follows:

Sec. 15: "Should any employee leave the service of the company to serve the Federal Government in its Army, Navy, or in Federal mobilization for war purposes by enlistment or by government legislation or edict, then such employee shall retain and accrue his seniority during such service . . . .".

The company's policy has been to treat any service under a first enlistment or by draft as service pursuant to a national conscription law for purposes of continuous service credit under the Pension Agreement. While the company first denied any credit for plaintiff's service from February 2, 1954 to November 26, 1957, because it was a second enlistment, it ultimately credited the service from February 1, 1954 thru January 31, 1955 as being service during the time of the Korean War.

With respect to plaintiff's claim to "seniority" rights with respect to his military service we place no weight on defendant's argument that plaintiff's military service prior to his entry in defendant's employment must be considered to determine whether the service for which he now contends (from 1954 to 1957) is "pursuant to a national conscription law". We do not believe that the statute permits such consideration. Since 1951 the benefits of the Act apply to those who enlist during peace time.

"Any person who, after entering the employment to which he seeks restoration, enlists in the Armed Forces . . . shall be entitled . . . to all the reemployment rights and other benefits provided for by this section in the case of persons included under the provisions of this title." 50 U.S.C. App. § 459(g)(1).

In Hall v. Chicago & Eastern Ill. RR. Co., 240 F.Supp. 797 [N.D.Ill.1964], the court rejected an argument that military service prior to the veteran's initial employment should be considered in measuring the four-year limitation period provided by Sec. 9(g)(1) [50 U.S.C. App. § 459(g)(1)]. Also in White v. Boston and Maine RR., 79 F.Supp. 85 [D.Mass.1948], the court refused to apply a distinction between persons enlisting for a first or second time.

■ Therefore, the benefits of the Act apply regardless of whether the veteran was drafted under conscription or voluntarily enlisted, or whether the service was in time of war or peace time.

"And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, p. 285, 66 S. Ct. 1105, p. 1111, 90 L.Ed. 1230 [1946].

The parties are divided as to whether plaintiff is entitled to be treated under 50 U.S.C.A. App. § 459(b)(B)(i) which provides that the returning veteran "be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay . . . .", or whether he falls under 50 U.S.C.A. App. § 459(c)(1) which provides:

"Any person who is restored to a position in accordance with the provision of paragraph (A) or (B) of subsection (b) of this section shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, . . . .".

■ Under the pension plan involved in the instant case, employees on furlough, sick leave, or leave of absence do not accrue continuous service credits. Thus, the parties are split on the well-established distinction between those rights of an employee which accrue with the passage of time and those for which some further act is required. Those which accrue with the passage of time are "seniority" rights which are protected under § 9(b).

The "seniority" rights are those stated in Fishgold v. Sullivan Drydock & Repair Corp., cit. supra, and thereafter designated as the "escalator" principle:

"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war . . . .. He acquire[d] not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence." (pp. 284–285, 66 S.Ct. p. 1111).

The "escalator" principle has been incorporated into the Act as subsection 9(c)(2):

"It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) of this section should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

The Supreme Court has warned that "seniority" is not an inflexible concept:

"In providing that a veteran shall be restored to the position he had before he entered the military service 'without loss of seniority,' § 8 of the Act [50 U.S.C.A. App. § 549] uses the term 'seniority' without definition. It is thus apparent that Congress was not creating a system of seniority but recognizing its operation as part of the process of collective bargaining. We must therefore look to the conventional uses of the seniority system in the process of collective bargaining in order to determine the rights of seniority which the Selective Service Act guaranteed the veteran." Aeronautical Industrial Dist. Lodge 727 v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287, 1290, 93 L.Ed. 1513 [1949]

The court held in *Aeronautical Lodge*, supra, that granting to union chairmen top seniority in cases of layoffs was an essential tool in the conduct of collective bargaining and was therefore not an encroachment on the seniority system to the detriment of veterans of greater temporal seniority and in violation of their veterans' rights under the Act.[1]

Nevertheless, the courts have proceeded, case by case, to delineate the "seniority" concept within the spirit of the Act without a rigid classification of any rights under collective bargaining agreements as "automatic" or "based on seniority".[2]

"Seniority" is not an abstract right or position. It is a measure by which other rights are determined, advancement, promotion, higher pay, vacations and vacation pay, layoffs, supplemental unemployment benefits, and in the present case, pensions.

Applying this rationale, the courts have determined that the "escalator" principle grants to the veteran the following benefits dependent upon seniority as though he were continuously employed during the period of his military service; vacation benefits of two weeks paid vacation after five years of employment, Mentzel v. Diamond, 167 F.2d 299 [3rd Cir. 1948]; promotion in grade by reason of time served since beginning of employment, Oakley v. Louisville & Nashville RR. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87 [1949]; promotion to permanent grade upon retroactive completion of a certain number of work days, Diehl v. Lehigh Valley Railroad, 348 U.S. 960, 75 S.Ct. 521, 99 L. Ed. 749 [1955], rev. per curiam 211 F. 2d 95 [3rd Cir. 1954]; permanent status in an "upgraded" position upon completion of a prescribed work period in the temporary "upgraded" position, Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 [1964]; severance allowance upon abolition of job based primarily upon employee's length of service with the railroad, Accardi v. Pennsylvania Railroad, 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 [1966]; wage increases put into effect during the veteran's absence on mil-

---

1. The collective bargaining agreement in the present case also provides credit for continuous service for union officers on leave of absence while filling full-time union offices.

2. See Cromartie, John L., Jr. Note, Veterans' Reemployment Rights Under the Universal Military Training and Service Act—Seniority Provisions. 1 Georgia Law Review, 292 (Winter 1967).

itary service based on a stated period of prior consecutive working service; Borges v. Art Steel Co., 246 F.2d 735 [2nd Cir. 1957]; and supplemental unemployment benefits based on accrued credits of paid work time, Hoffman v. Bethlehem Steel Corp., 477 F.2d 860 [3rd Cir. 1973].

It will be noted that the courts have looked behind the requirements for such benefits to determine whether they were truly those for which some further act in addition to the passage of time was required. In doing so they found "bizarre results" in *Accardi* (supra) and *Hoffman* (supra) in that the work requirement could be satisfied by minimal attendance. In *Accardi* the benefits could be earned by an employee working one day per month, seven months of any year. In *Hoffman* the benefits would accrue to an employee working one hour per week. In each case the employee received credit for a full time period regardless of the fractional period which he worked.

"This fact made it obvious that severance benefits did not in fact depend upon hours worked but upon seniority." Hoffman v. Bethlehem Steel Corp., supra, 477 F.2d at p. 863.

The other line of cases which have determined veterans benefits under Sec. 9(c) of the Act have limited the "escalator" principle in those cases where the benefit sought has been one determined by demonstrated fitness or ability.

In McKinney v. Missouri-Kansas-Texas RR., 357 U.S. 265, 78 S.Ct. 1222, 2 L. Ed.2d 1305 [1958], the employee was promoted upon his return from military service to the status he would have occupied had he been steadily employed during the period of his absence. However, he argued that his seniority in the new position should be dated from the date that he would have had the opportunity to qualify for the promotion rather than the date of his actual promotion.

The court found that Section 9(c) does not assure the employee that the past with all its possibilities of betterment will be recalled.

"Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment." McKinney v. Missouri-Kansas-Texas RR., supra (pp. 271–272, 78 S.Ct. p. 1226).

The court found that promotion was not based solely on seniority, was dependent on fitness and ability and the exercise of a discriminating managerial choice. Therefore, having no automatic right to the promotion, the employee had no right to its seniority.

In Kasmeier v. Chicago, Rock Island & Pacific RR., 437 F.2d 151 [10th Cir. 1971], the returning veteran had received all the benefits that he would have received had he been in continuous employment except that he was denied a paid vacation for the year after his return. The employer cited the collective bargaining agreement which required 110 days of compensated service in the previous calendar year to qualify for a paid vacation in the following year. Kasmeier had only worked 53 days in the year of his return, and was denied the paid vacation for the following year. The court distinguished this case from *Accardi*, supra, by finding that the 110 day requirement was not a mere facade to veil the true nature of the benefits (i. e. as based on length of service), but was a legitimate uniformly applied condition precedent to vacation benefits.

"The uniformly applied regulation is that before *anyone* receives a paid vacation he must perform a specified minimum number of work days." (p. 155).

And in Harvey v. Braniff International Airways, Inc., 164 F.2d 521 [5th Cir. 1947], the court found that the seniority afforded the veterans by reason of military service entitled them only to the right to take the qualifying test for promotion; but that the pay rate was based on the experience gained in the position and was not, therefore, a "seniority" right under Section 9(b) of the Act to which they were automatically entitled.

Section 9(c) of the Act has been construed as follows:

"[a]nd the words 'other benefits' are put in perspective when read with what comes immediately before and after them: 'shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces.'

While the problem of construction is difficult, it seems most likely that the expression 'insurance or other benefits' was meant to cover a fairly narrow group of economic advantages whose common quality was that they were miscellaneous fringe benefits not usually regarded as part of 'pay,' 'status,' or 'seniority.' Vacation pay is of this fringe character, and we have previously refused to let returning veterans collect it if nonveterans on leave of absence do not get it. Dwyer v. Crosby Co., 2 Cir., 167 F.2d 567, 569. Siaskiewicz v. General Electric Co., 2 Cir., 166 F.2d 463. In the latter case we explained that vacation money was really not 'pay' in the statutory sense. Siaskiewicz v. General Electric Co., supra, 2 Cir., 166 F.2d 463, 466.

The present wage increases were in no sense fringe benefits, but became a regular part of the jobholder's pay or status . . . We need not decide whether such increases constitute 'pay' or 'status' . . .". Borges v.

Art Steel Co., cit. supra, 246 F.2d (pp. 738–739.)

and

"Seniority benefits are protected by § 9b(B)(i). . . . Section 9(c) was intended to add certain protections to the veteran and not take away those which are granted to him by § 9(b)(B) and other clauses of § 9(c). *Accardi,* supra, 383 U.S. at p. 232, 86 S.Ct. 768. The other benefits clause was added to the Act for the express purpose of entitling employees to receive, while in the service, such benefits as their employers accorded employees on leave of absence. *Accardi,* 383 U.S. at 231, 86 S.Ct. 768." Hoffman v. Bethlehem Steel Corp., cit. supra (477 F.2d p. 862.)

With these distinctions in mind we turn to the present pension problem. We are not without the benefit of an academic crystal ball in this problem. This situation was foreseen in a 1966 Harvard Law analysis of the *Accardi* case:

"This emphasis on the 'real nature' of the benefit suggests that the determination of what is included in 'seniority' will be based on the degree to which the purpose of the benefit is normally thought to be compensation for length of service with the employer, regardless of the standard of measurement used in the individual case.

\* \* \* \* \* \*

This interpretation of Accardi suggests that it may well be extended to affect the computation of benefits other than severance pay. One area of considerable potential controversy is pension plans. Generally, the passage of a certain number of years is required before rights under such plans vest, that is, before the employee is entitled to receive any benefits. Once an employee's rights have been vested, he is entitled to benefits computed in proportion to his total years of service with the company. Since the primary purpose of the vesting requirement—promotion of per-

sonnel stability by giving the employee incentives to remain with the company—is related to *length* of service rather than *amount* of service, time spent in military service should probably be included in determining the *vesting* of benefits. But since the *amount* of work benefits is usually meant to compensate more for work performed, as measured by annual earnings, than for a period of service, it seems less justifiable to require the inclusion of an employee's time in the armed forces in the computation of the amount of his benefits." (emphasis supplied). "The Supreme Court, 1965 Term" 80 Harvard Law Review 91, 148 [1966].

The distinction between *length* of service and *amount* of service has been recognized in the decided cases as the measure of specific benefits. In Harvey v. Braniff International Airways, supra, where the bargaining agreement provided that the pay rate was based on experience, pilots who had returned from military service were given credit for the military service time in promotions to first pilot status but were denied a pay base equal to that which they would have received had they remained on the job. The seniority afforded the veterans only the right to take the qualifying examination for the higher position, but not the base pay earned by experience in the position.

The dissenting opinion of Mr. Justice Douglas in Eagar v. Magma Copper Co., 389 U.S. 323, 325, 88 S.Ct. 503, 19 L. Ed.2d 557 [1967], makes it clear that there was no dispute over the fact that the employer did include military service in the seniority which determined the length of vacation and the amount of vacation pay, but that it relied on the "other benefits" clause of Sec. 9(c) in determining entitlement to vacation and vacation pay.

The Pension Agreement recognizes a distinction between the service required for vesting and the computation of the amount of pension.

Sec. 3, par. C:

"Where an Employee, other than a temporary Employee, enters the military service of the United States, is discharged or relieved from active service under conditions other than dishonorable, and returns to active employment within 90 days after such discharge or relief, such absence shall not constitute a break in continuous service, but for the purpose of computing the *amount* of his pension, only the period of service rendered in time of war or pursuant to a national conscription law . . . shall be considered." (emphasis supplied).

We perceive in this language a difference in the approach between the type of service required for the vesting of pension rights and the type of service to be considered in computing the amount of the pension. The amount of the pension is computed by multiplying the years of continuous service credited against a stated dollar figure.

We believe that a valid distinction may be drawn between the type of service required for the vesting of a right to pension, and the type of service used to compute the amount of said pension.

Vesting is an important and independent right under pension plans. Whereas originally pension plans were considered gratuities to which the employee had no enforceable right, the concept evolved that the pension plan was a matter of contract and was enforceable by one who had complied with all its provisions. This is in accord with the view that a retirement pension represents pay withheld to induce continued faithful service, amounting to delayed compensation for services rendered. Spurred by the requirements of the Internal Revenue Code which allowed certain tax advantages to a properly qualified plan, it became settled that after a certain period of service the participant became entitled to an enforceable right in the pension plan and any trust property set aside for its administration, even though

the participant had not yet fulfilled all the requirements of age, length of service, or disability for the commencement of payments. See Siegel v. First Pennsylvania Banking & Trust Co., 201 F. Supp. 664 [E.D.Pa.1961]:

> "The right which thus vests is the right to receive payments in an amount computed in accord with the conditions and provisions of the whole contract." 60 Am.Jur.2d Pensions and Retirement Funds § 74, p. 951.

■ Because the passage of a certain number of years of service is required before rights under the pension plan vest, and because no employee may accrue more than one year of credited service in any calendar year, it seems clear that the vesting rights are based on length of service with the company, for which purpose veterans should be entitled to be treated as if they were continuously employed during their period of military service. The Pension Agreement now in effect (as amended through February 16, 1969, Stipulation Exhibit E), Sec. 3(c) does allow credit for military service in computing the amount of the pension for "only the period of service rendered in time of war or pursuant to a national conscription law, plus ninety (90) days."

The plaintiff here had a continuous contractual relationship with defendant from January 22, 1951 until September 29, 1969, or 18⅝₁₂ years, except for three years and 10 months spent in the military service. However, because of layoffs and other interruptions he has only accomplished 7¹⁰⁄₁₂ years of actual employment over this period excluding the credit for one year given in recognition of actual war time service.

■ The record does not reveal the reasons for the long continuance of this relationship with such a relatively short total period of actual employment. Yet the bond of employer and employee continued between the parties for all of those years. We believe that the primary purpose of the retirement benefit is to promote personnel stability by giving the employee an incentive to remain with the company. (See Harvard Law Review, op. cit. p. 149). Thus the vesting of pension rights is dependent upon the length of the relationship rather than the amount of actual work performed. On the other hand the amount of the benefits is properly dependent upon the actual work performed as measured by monthly earnings.

■ We, therefore, conclude that the vesting provision of defendant's pension plan which requires that an employee have ten or more years of continuous service under the pension agreement deals with a right of seniority or status under Sec. 9(b)(B)(i) of the Act, and that defendant is required by the Act to restore plaintiff to the status and seniority he would have occupied had he been in continuous service with the employer during the term of his military service. Under the stipulated evidence in this case plaintiff would therefore meet the requirement of 10 or more years continuous service under the Pension Agreement.

As to the computation of his pension, the age of eligibility, and the amount of payments, the court finds these to be matters dependent upon work actually performed and compensation earned, and therefore Plaintiff is entitled to be treated under the provisions of Sec. 9(c)(1) of the Act in that he "shall be entitled to participate in insurance of other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces."

## ON MOTION FOR CLARIFICATION OR RECONSIDERATION

In the above matter we have considered Plaintiff's Motion for Clarification or Reconsideration of the Opinion filed September 19, 1973. The briefs of counsel and the oral argument indicated that

**306**

plaintiff's primary concern is for a reconsideration of the Order because plaintiff is in disagreement with the conclusion reached. We appreciate that reasonable men may differ on the conclusion particularly in view of the absence of a controlling precedent on the specific question treated herein. On the other hand we do not completely understand the plaintiff's motion for clarification in a sense other than its disagreement with the conclusion reached. In specific response to the request for clarification as stated in plaintiff's motion and brief we present the following summary of our holding in response to plaintiff's specific questions:

(1) We held that the *amount* of the pension is a benefit which falls under 50 U.S.C.A. App. § 459(c)(1) which provides that the employee "shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, . . . .".

(2) We held that the amount of the *pension,* depending upon the circumstances, is subject to a work requirement of the employer.

(3) We held that the limitation language of Section 3(C) is invalid only for the purpose of determining the right of the employee to the *vesting* of his pension, but that it is not invalid for the purpose of determining the *amount* because the amount of the pension was subject to a work requirement and was to be determined in accordance with the collective bargaining agreement in effect during the period of plaintiff's employment.

It is, therefore, ordered that the Motion of Plaintiff for Clarification or Reconsideration is denied, and that the following Final Order be entered:

### ORDER

The Court having filed its Opinion and Order in this matter on September 19, 1973, setting forth its Findings of Fact and Conclusions of Law, and having granted plaintiff's Motion for Summary Judgment,

Therefore, consistent with the aforesaid Opinion, Findings of Fact and Conclusions of Law of this court, it is

Ordered, adjudged and decreed:

1. That for the purpose of determining eligibility for a vested pension benefit under defendant's pension plan, and for no other purpose, defendant shall credit the plaintiff with continuous service for the total time spent by plaintiff in the military service of the United States from February 2, 1954 to December 1, 1957, i. e., three and ten-twelfths ($3\frac{10}{12}$ths) years of continuous service which, when combined with years of continuous service credited under the Pension Agreement for plaintiff's active employment at the Creighton Plant, will result in crediting plaintiff with a total of eleven and eight-twelfths ($11\frac{8}{12}$ths) years, thus enabling plaintiff to satisfy the ten (10) year vesting requirement under the Pension Agreement.

2. That for the purpose of determining the amount of the vested pension benefit payable to the plaintiff under the provisions of said Pension Plan, plaintiff shall be credited with nine and one-twelfth ($9\frac{1}{12}$th) years of continuous service, representing seven and ten-twelfths ($7\frac{10}{12}$ths) years of credited service for active employment at the Creighton Plant and one (1) year of credited service for military service during time of war, plus ninety (90) days as provided in said Pension Agreement.